ARBOR FARMS, LLC v GEOSTAR CORPORATION

Docket No. 314911. Submitted May 14, 2014, at Lansing. Decided May 27,
2014, at 9:05 a.m.

Arbor Farms, LLC, Jaswinder Grover, MD, Monica Grover, and
others, brought a postjudgment collection action against GeoStar
Corporation in the Isabella Circuit Court. ClassicStar, LLC, which
was owned by defendant, had engaged in a fraudulent business
scheme involving the leasing of thoroughbred racehorses for
breeding purposes. Plaintiffs, investors in the fraudulent business,
filed suit against defendant and others in the United States
District Court for the Eastern District of Kentucky. In November
2011, the federal district court entered an amended judgment
against defendant in the amount of $65,042,084.61. On the same
day that plaintiffs filed this postjudgment collection action, they
filed an ex parte motion for a restraining order under MCL
600.6116, requesting that defendant maintain the status quo and
refrain from transferring any of its assets. The court, Paul H.
Chamberlain, J., entered the order. Defendant moved to set aside
the restraining order. At a motion hearing on November 2, 2012,
the court declined to set aside the order, but modified it. The
modified order applied only to defendant's Michigan assets and
required that defendant provide an inventory of its business
documents and a log of all documents defendant believed were
subject to the attorney-client privilege. The court gave defendant
30 days to comply with the order. Plaintiffs filed a proposed order
modifying the restraining order in accordance with their under-
standing of the court's ruling at the November 2, 2012 hearing.
Defendant objected to the proposed order, and the court scheduled
a hearing for January 25, 2013. At the hearing, the court indicated
that it viewed defendant's arguments as an attempt to relitigate
the motion to set aside the restraining order. The court concluded
that defendant was in violation of its November 2, 2012 oral ruling
because defendant had not yet provided the inventory of assets.
Plaintiffs subsequently moved to hold defendant in contempt for
failing to comply with the court's orders regarding the business
records. The court agreed and held defendant in contempt for
failing to produce an inventory of its Michigan assets and business
records within 30 days after the court's November 2, 2012 ruling.

The court also appointed a receiver over defendant's Michigan assets, including its business documents, explaining that the receiver was to prepare the inventory for the court. Defendant appealed.

The Court of Appeals *held*:

1. In an action brought to enforce a judgment, the trial court must possess jurisdiction over the judgment debtor or the judgment debtor's property. When a judgment debtor owns property in Michigan, jurisdiction is proper in postjudgment enforcement proceedings without the necessity of demonstrating personal jurisdiction over the debtor. In this case, defendant had extensive business records in Michigan. The presence of this property was sufficient to establish the court's jurisdiction over the postjudgment collection proceedings, including discovery efforts and the award of equitable relief.

2. Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court. Courts in Michigan have inherent and statutory, MCL 600.1701 *et seq.*, power to punish contempt of court by fine, imprisonment, or both. Courts generally speak through their judgments and decrees, and not through their oral statements and written opinions. However, there are circumstances in which an oral ruling will have the same force and effect as a written order. When assessing whether an oral ruling has equal effect to that of a written order, courts consider whether the oral ruling contains indicia of formality and finality comparable to that of a written order. In this case, at the November 2, 2012 hearing, before ruling, the court stated that "this is the ruling of the Court." It then stated that it was modifying the restraining order to require the preservation of defendant's Michigan assets, to require the creation of an inventory of defendant's Michigan assets and a privilege log, and that defendant had 30 days to create the inventory and privilege log. These statements reflected a formal resolution of the issue. And defendant's own subsequent actions—including submitting a statement to the court discussing the court's oral instructions— demonstrated defendant's understanding of the formal and final nature of the ruling. Nor did the trial court clearly err by determining that it was possible for defendant to comply with the November 2, 2012 order. The cost and difficulty of creating an inventory of the records did not make compliance impossible. Because defendant did not provide an inventory and a privilege log within 30 days after the court's order and had not made any effort to do so, the trial court did not abuse its discretion by holding defendant in contempt of court.

ers in all cases in which appointment is allowed by law. In general, a receiver should only be appointed in extreme cases, but a party's past unimpressive performance may justify the trial court in appointing a receiver. In cases in which a money judgment has entered, a circuit court has statutory authority to appoint a receiver of any property the judgment debtor has or may thereafter acquire, MCL 600.6104(4), and equitable authority to make such appointment when other approaches have failed to bring about compliance with the court's orders. In this case, given defendant's complete failure to comply with the court's orders, and plaintiffs' concern that defendant's accountant had already liquidated some of defendant's Michigan assets, the appointment of a receiver to preserve defendant's records and to create an inventory of those records and a privilege log was a proper exercise of the court's equitable and statutory power to appoint a receiver. And, contrary to defendant's assertions, the appointment of a receiver posed no danger to defendant's interests or privileges, did not interfere with the federal court's jurisdiction over the underlying suit, did not implicate defendant's right to be free from unreasonable searches and seizures, and was not tantamount to improper execution on property without monetary value. Therefore, the trial court did not abuse its discretion in appointing a receiver.

Affirmed.

1. JURISDICTION — POSTJUDGMENT ENFORCEMENT PROCEEDINGS — PROPERTY IN MICHIGAN.

When a judgment debtor owns property in Michigan, jurisdiction is proper in postjudgment enforcement proceedings without the necessity of demonstrating personal jurisdiction over the debtor.

2. JUDGMENTS — ORAL RULINGS — EFFECT.

Courts generally speak through their judgments and decrees, and not through their oral statements and written opinions; there are circumstances, however, in which an oral ruling will have the same force and effect as a written order; when assessing whether an oral ruling has equal effect to that of a written order, courts consider whether the oral ruling contains indicia of formality and finality comparable to that of a written order.

3. ACTIONS — POSTJUDGMENT ENFORCEMENT PROCEEDINGS — RECEIVERS — APPOINTMENT.

Under MCL 600.2926, circuit court judges may appoint receivers in all cases in which appointment is allowed by law; in cases in which a money judgment has entered, a circuit court has statutory authority to appoint a receiver of any property the judgment debtor has or may thereafter acquire, MCL 600.6104(4), and equitable authority to

make such appointment when other approaches have failed to bring
about compliance with the court's orders.

*Hoenig & Barham* (by *Lesley A. Hoenig*) and *Vincent
E. Mauer* for plaintiffs.

*Silverman & Morris, PLLC* (by *Thomas R. Morris*),
for defendant.

Before: STEPHENS, P.J., and HOEKSTRA and METER, JJ.

HOEKSTRA, J. In this postjudgment collection action to
enforce a foreign money judgment, defendant appeals
by right the trial court's civil contempt order. Because
the trial court had jurisdiction over defendant's prop-
erty in Michigan and did not abuse its discretion by
appointing a receiver over defendant's Michigan prop-
erty or by holding defendant in contempt for its failure
to comply with a court order, we affirm.

Between 2001 and 2005, ClassicStar, LLC, which was
owned by defendant during this period, engaged in a
Ponzi scheme that involved the leasing of thoroughbred
racehorses for breeding purposes. In 2006, plaintiffs,
who are individuals and entities that had invested in
this scheme, filed suit against defendant and others in
the United States District Court for the Eastern Dis-
trict of Kentucky, asserting claims of breach of contract,
fraud, and violations of the Racketeer Influenced and
Corrupt Organizations Act (RICO), 18 USC 1961 *et seq*.
Ultimately, plaintiffs prevailed on a motion for sum-
mary disposition, and, in November 2011, the federal
district court entered an amended judgment against
defendant in the amount of $65,042,084.61.

On May 17, 2012, plaintiffs began a postjudgment
collection action against defendant in Michigan by filing a
notice of entry of a foreign judgment in the Isabella

Circuit Court. That same day, plaintiffs filed an ex parte motion for a restraining order pursuant to MCL 600.6116,[1] requesting that defendant maintain the status quo and refrain from transferring its assets, including but not limited to exercising its rights as sole shareholder of CBM Resources, defendant's wholly owned Michigan subsidiary. That same day, granting plaintiffs' request, the trial court entered a restraining order that read as follows:

IT IS HEREBY ORDERED that:

A. GeoStar Corporation ("GeoStar") is ordered to maintain the *status quo* and is hereby restrained from transferring, encumbering, distributing or otherwise disposing of any assets pursuant to MCL 600.6116, including, but not limited to exercising its rights as the sole shareholder of CBM Resources.

B. GeoStar is further ordered to hold any amounts, including but not limited to any distributions, due and owing to GeoStar from CBM Resources, in escrow for the benefit of Plaintiffs. This provision applies to amounts which are due and owing as of the date of this Order or which become due and owing during the time this Order remains in effect.

C. GeoStar is further ordered to provide, within thirty (30) days of the date of this Order, a complete accounting of all transfers, encumbrances, distributions and dispositions within six (6) years prior to entry of this Order.

On two occasions thereafter, defendant moved to set aside the restraining order, asserting in part that the

---

[1] MCL 600.6116(1) provides as follows:

An order for examination of a judgment debtor may contain a provision restraining the judgment debtor from making or suffering any transfer or other disposition of, or interference with any of his property then held or thereafter acquired by or becoming due to him not exempt by law from application to the satisfaction of the judgment, until further direction in the premises, and such other provisions as the court may deem proper.

trial court lacked personal jurisdiction over defendant. Plaintiffs responded that jurisdiction was proper because defendant continued to conduct business in Michigan through the control of its Michigan subsidiaries and, even if personal jurisdiction did not exist, jurisdiction was proper over defendant's assets located in Michigan, including extensive business records located in two storage lockers in Mt. Pleasant, Michigan. Eventually, at a motion hearing on November 2, 2012, the trial court denied defendant's motion to set aside the May 17, 2012 restraining order. However, the court modified the restraining order to apply only to defendant's Michigan assets and gave defendant 30 days to comply with the restraining order's provisions. In addition, the trial court ordered the creation of an inventory of defendant's business documents and a "privilege log" for all documents defendant believed were subject to the attorney-client privilege.

A week later, plaintiffs provided defendant notice of submission of an order modifying the court's May 17, 2012 restraining order under the "seven-day rule," see MCR 2.602(B)(3). Defendant objected to the proposed order, asserting that it inaccurately set forth the trial court's November 2, 2012 ruling. Specifically, defendant argued that while the trial court limited its ruling to defendant's Michigan assets, the proposed order referred to assets generally; and further, while the trial court's ruling required defendant to "inventory" all of defendant's Michigan assets generally, the proposed order required defendant to "produce" all records remaining in storage and in possession of defendant's accountant. The trial court did not sign the proposed order and instead scheduled a hearing for January 25, 2013.

Three days before that hearing, on January 22, 2013, defendant filed an accounting, in which defendant

maintained that it has no real or personal property in Michigan "with any market value." It further indicated that it ceased doing business in Michigan on October 1, 2011, and that business records (including computers and papers) had been placed in storage. Defendant then stated that the records were "too voluminous to be itemized," indicating that it would take two 40-foot semitrailers to move the records, and that many of these documents, particularly those in the possession of its accountant, were privileged.

At the January 25, 2013 hearing on defendant's objection to the proposed order, defendant again argued that the trial court lacked personal jurisdiction and also that plaintiffs sought to execute against business records which were not subject to execution and to impermissibly use a judgment to gain access to those records. Viewing defendant's arguments as an attempt to relitigate the earlier motion to set aside the restraining order, the trial court declined to revisit the matter and noted that it would not tolerate defendant's efforts at delay or its "papering the court and opposing party with a bunch of paperwork." The hearing ended with the trial court concluding that defendant was in violation of the trial court's November 2, 2012 ruling because the inventory of assets was due by December 3, 2012. Ultimately, the trial court signed plaintiffs' proposed order modifying the May 17, 2012 restraining order.

In early February 2013, defendant moved for reconsideration, and thereafter plaintiffs moved to hold defendant and its counsel in contempt of court for failing to comply with the court's orders regarding the business records. In response, defendant again asserted that the trial court lacked jurisdiction and that the business records were not subject to execution. Defen-

dant further asserted that the requirements for a finding of contempt had not been met because no valid order existed given the court's lack of jurisdiction over defendant, and that no willful disregard of the January 25, 2013 restraining order had occurred.

On February 19, 2013, the trial court denied defendant's motion for reconsideration and found defendant in contempt of court for failing to produce, within the allotted time, an inventory of assets and documents located in Michigan. To remedy defendant's refusal to comply, the trial court appointed a receiver over defendant's Michigan assets, including documents, explaining that "the receiver is to take control of the assets and documents located in Michigan and to prepare an inventory for the court that includes electronic documents as well as non-electronic documents." In response to arguments from defense counsel that the restraining order mandated discovery of the storage locker contents, the trial court clarified that it was not ordering production of the records at that time, but simply preservation. To this effect, the trial court entered an order modifying the January 25, 2013 restraining order by omitting the reference to "production" of documents, and indicating that defendant must "preserve" all records located in storage facilities and in the possession of defendant's accountant. That same day, the trial court entered an order holding defendant (but not defense counsel) in contempt of the court's November 2, 2012 ruling and the January 25, 2013 order as amended. Defendant now appeals as of right.

On appeal, defendant first argues that the trial court lacked personal jurisdiction over defendant and, for this reason, could not order discovery or injunctive relief. In response, plaintiffs maintain that, in the context of this postjudgment collection action, personal jurisdiction

was not required because defendant owned property in Michigan.[2] We agree with plaintiffs.

Our review of jurisdictional questions is de novo. *Electrolines, Inc v Prudential Assurance Co*, 260 Mich App 144, 152; 677 NW2d 874 (2003). Pursuant to the Full Faith and Credit Clause, US Const, art IV, § 1, a judgment entered in another state is "presumptively valid and subject to recognition in Michigan . . . ." *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 216; 813 NW2d 752 (2011) (quotation marks and citation omitted). The statutory procedure for obtaining enforcement of foreign judgments is controlled by the Uniform Enforcement of Foreign Judgments Act (UEFJA), MCL 691.1171 *et seq.*, which Michigan adopted in 1997. *Electrolines*, 260 Mich App at 157. According to the UEFJA, a foreign judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of [a Michigan court] and may be enforced or satisfied in like manner." MCL 691.1173.

When a party seeks enforcement of a foreign judgment in Michigan, there exists a foundational jurisdictional requirement that must be satisfied with regard to the judgment debtor's person or property. *Electrolines*, 260 Mich App at 160. As we explained in *Electrolines*, "in an action brought to enforce a judgment, the trial court must possess jurisdiction over the judgment debtor or the judgment debtor's property." *Id.* at 163. This jurisdictional rule is notably "wider" than that applicable in other civil actions, in that jurisdiction is

---

[2] Plaintiffs also argue that the trial court in fact had personal jurisdiction over defendant. Because we conclude that the trial court's jurisdiction over defendant's property sufficed in this postjudgment collection action, we need not reach the question of the trial court's personal jurisdiction over defendant.

proper in an enforcement action when the defendant owns property in Michigan, without the necessity of establishing personal jurisdiction over a judgment debtor or of demonstrating that the property in question relates to the underlying controversy. *Id.* at 161-163. More fully, the wider jurisdiction applicable in enforcement actions as compared to other actions may be explained as follows:

> Whereas "a state has jurisdiction to adjudicate a claim on the basis of presence of property in the forum only where the property is reasonably connected with the claim, an action to enforce a judgment may usually be brought wherever property of the defendant is found, without any necessary connection between the underlying action and the property, or between the defendant and the forum." [*Id.* at 161, quoting 1 Restatement Foreign Relations Law of the United States, 3d, part IV, ch 8, subch A, § 481, comment *h*, p 597 (1986).]

The reason for this wider jurisdiction can be found in *Shaffer v Heitner*, 433 US 186, 210 n 36; 97 S Ct 2569; 53 L Ed 2d 683 (1977), wherein the Court explained:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

Stated differently, it would be inequitable and irrational to propose that a debtor could avoid enforcement of a judgment merely "by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him." *Id.* at 210. See also *Lenchyshyn v Pelko Electric, Inc*, 723 NYS2d 285, 291-292; 281 AD2d 42 (2001) (holding that assets are not immune from execution or restraint simply because a judgment debtor absents himself from the

state). Following this rationale, consistent with *Electrolines*, we conclude that, when a judgment debtor owns property in Michigan, jurisdiction is proper in postjudgment enforcement proceedings without the necessity of demonstrating personal jurisdiction over the debtor.[3] See *Electrolines*, 260 Mich App at 163.

In the present case, defendant concedes ownership of personal property in Michigan in the form of extensive business records located within the state. Given the presence of defendant's property in Michigan, plaintiffs were not required to demonstrate the existence of the trial court's personal jurisdiction over defendant. Rather, the presence of defendant's property within the state was, on its own, sufficient to establish jurisdiction in this postjudgment collection proceeding. Cf. *id.* (concluding that a showing of personal jurisdiction was required because the plaintiff failed to identify any property in Michigan owned by the defendants).

Despite its ownership of property in Michigan, defendant nonetheless maintains that personal jurisdiction was required because the trial court essentially ordered discovery of the business records in question as well as equitable relief in the form of an injunction. More broadly, defendant's argument involves the assertion that the jurisdictional requirements in postjudgment enforcement proceedings must vary depending on the

---

[3] Defendant provides no authority, nor are we aware of any, for the proposition that, despite a debtor's ownership of property in the state, a court may not enforce a foreign judgment because personal jurisdiction over the debtor is lacking. On the contrary, multiple jurisdictions rely on footnote 36 of *Shaffer* to hold that personal jurisdiction is not required to enforce a foreign judgment against a nonresident defendant. See, e.g., *Lenchyshyn*, 723 NYS2d 289-292; *Koh v Inno-Pacific Holdings, Ltd*, 114 Wash App 268, 274-275; 54 P3d 1270 (2002); *Williamson v Williamson*, 247 Ga 260, 262-263; 275 SE2d 42 (1981). See also *Livingston v Naylor*, 173 Md App 488, 512-514; 920 A2d 34 (2007) (providing a supporting list of authorities from numerous jurisdictions).

type of enforcement sought. However, the authorities defendant offers in support of its argument do not lend support to defendant's contentions. Specifically, defendant relies on *Ann Arbor Bank v Weber*, 338 Mich 341, 345-346; 61 NW2d 84 (1953), for the proposition that personal jurisdiction is required when discovery is ordered and on *Ciotte v Ullrich*, 267 Mich 136, 138; 255 NW 179 (1934), for the proposition that an injunction may be granted only when a court possesses personal jurisdiction over the individual in question. Neither case, however, involved postjudgment action, meaning that those cases, unlike the present dispute, did not implicate the wider jurisdiction applicable to enforcement proceedings.

Recognizing the wider jurisdiction applicable in enforcement actions, and cognizant of the rationale for this broad jurisdiction, we reject defendant's contention that jurisdictional requirements must differ in postjudgment proceedings based on the nature of the enforcement sought. Indeed, to follow defendant's rationale would, contrary to the rationale espoused in *Shaffer*, 433 US at 210 n 36, encourage a debtor to evade his or her creditors and avoid or delay enforcement proceedings by secreting assets, including business records, in jurisdictions where personal jurisdiction does not exist over the debtor. We know of no basis for this unsound rule defendant urges us to adopt and, instead, following *Shaffer*'s reasoning, we conclude that the presence of a debtor's property in Michigan provides the trial court with jurisdiction in postjudgment collection proceedings, which proceedings may include discovery and injunctive or other equitable relief related to property in Michigan.[4] In sum, having chosen to

---

[4] As noted, MCL 691.1173 indicates that a foreign judgment filed in a Michigan court "has the same effect . . . as a judgment of [a Michigan

store business records in Michigan, defendant has rendered that property subject to Michigan's jurisdiction in this postjudgment collection action, including discovery efforts and equitable relief, without regard for the trial court's personal jurisdiction over defendant.

Next, defendant challenges the trial court's contempt order, arguing that there was no proof that defendant willfully disregarded or disobeyed the order.[5] In particular, defendant maintains that the trial court's verbal order on November 2, 2012, did not become effective until the entry of a written order on January 25, 2013, at which time compliance was impossible because the order had a retroactive deadline of December 3, 2012. Defendant also argues that compliance with the inventory and privilege-log requirements could not be achieved because of the voluminous number of business records at issue. We disagree.

This Court reviews a trial court's contempt order for an abuse of discretion, while the underlying factual findings are reviewed for clear error. *Davis v Detroit Fin Review Team*, 296 Mich App 568, 623; 821 NW2d 896 (2012). A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are never-

court] and may be enforced or satisfied in like manner." Thus, a Michigan court with jurisdiction in an enforcement proceeding concerning a foreign judgment may compel discovery of property, prevent transfer of property, order satisfaction of the judgment out of the property, appoint a receiver over the property, or take other action as the court may, in its discretion, deem appropriate. See MCL 600.6104.

[5] To the extent defendant contends no valid order existed because the trial court lacked personal jurisdiction, these jurisdictional contentions are without merit for the reasons already explained in this opinion.

theless 'left with the definite and firm conviction that a mistake has been made.' " *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008) (citation omitted).

Contempt of court is defined as a "wilful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). Courts in Michigan have inherent and statutory power to punish contempt of court by fine or imprisonment. *Id.*; MCL 600.1701 *et seq.* The purpose of this power is to preserve the effectiveness and sustain the power of the courts. *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003). Accordingly, "[a] party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Id.* at 110 (quotation marks and citation omitted). Relevant in this case, MCL 600.1701(g) grants trial courts the authority to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct, including "[p]arties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court." See also *Davis*, 296 Mich App at 623 (recognizing a trial court's inherent authority to enforce its orders).

In this case, on November 2, 2012, the trial court verbally ordered the creation of an inventory and a privilege log related to defendant's Michigan assets within 30 days. The trial court order in this regard was a verbal one, and it is a settled maxim that courts generally speak through their judgments and decrees, and not their oral statements or written opinions.

*Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977). However, there are circumstances in which "[a]n oral ruling has the same force and effect as a written order," as when, for example, an oral ruling clearly communicates the finality of the court's pronouncement. *McClure v H K Porter Co*, 174 Mich App 499, 503; 436 NW2d 677 (1988). See also *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996). When assessing whether an oral ruling has equal effect to that of a written order, we consider whether the oral ruling contains indicia of formality and finality comparable to that of a written order. See *People v Vincent*, 455 Mich 110, 125; 565 NW2d 629 (1997).

We conclude that such indicia are present in this case. At the November 2, 2012 hearing, before ruling, the trial court unequivocally indicated that "this is the ruling of the Court." It then stated that it was modifying the May 17, 2012 restraining order "to simply restrain transfer or destruction and require preservation of all assets in Michigan that belong to the Defendant." It stated that an inventory of assets in Michigan was to be created, as well as a privilege log, and that defendant had 30 days to do so. These statements reflect a formal resolution, not a tentative conclusion or merely loose impressions of the matter. Indeed, although it is not for a party to determine the validity of a court's order, *Davis*, 296 Mich App at 624, we note that defendant's own actions after the November 2, 2012 ruling demonstrated its understanding of the formal and final nature of the ruling. That is, defendant submitted a statement to the trial court pursuant to the November 2, 2012 ruling, discussing the trial court's oral instructions and claiming it could not comply with the court's order to create an inventory and a privilege log because the documents were too voluminous to be

itemized. Given the formality of the court's oral ruling and defendant's own recognition of its applicability, defendant's contention that the order was not final until January 25, 2013, is unpersuasive and appears disingenuous. The order at issue came into being on November 2, 2012, allowing defendant 30 days to comply with its directives.

Further, we discern no clear error in the trial court's determination that it was not impossible for defendant to comply with the November 2, 2012 order. At the contempt hearing in February 2013, defense counsel conceded that, despite knowing full well that the trial court had ordered the creation of an inventory and a privilege log, defendant had taken no action to comply with this order because defendant believed that compliance was impossible given the voluminous number of records. The cost or difficulty of inventorying these records, however, did not make compliance truly impossible and did not excuse defendant's unequivocal disregard of the order. Cf. *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40-41; 585 NW2d 290 (1998) (setting aside an order of contempt when compliance was truly impossible because the relevant event had already occurred). Because defendant did not provide an inventory and a privilege log by December 3, 2012, or by the time of the contempt hearing on February 19, 2013, and had not made any effort to do so, the trial court did not abuse its discretion by holding defendant in contempt of court.

Lastly, defendant contends that the trial court's appointment of a receiver was an abuse of discretion. In particular, defendant asserts that appointment of a receiver was not warranted under MCL 600.2926, and that, by appointing a receiver, the trial court: (1) interfered with the jurisdiction of the Kentucky district

court, (2) prejudiced defendant's rights in relation to an ongoing federal investigation and the privileges recently recognized by the Ninth Circuit Court of Appeals, (3) violated defendant's constitutional rights, including the right against unreasonable search and seizure, and (4) impermissibly allowed execution against documents that have no market value.

This Court reviews for an abuse of discretion the trial court's decision to appoint a receiver. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 523; 730 NW2d 481 (2007). Likewise, whether a court should defer to an alternative, foreign forum is reviewed for an abuse of discretion. *Hare*, 291 Mich App at 214-215. As noted, a trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388. To the extent defendant's arguments involve constitutional concerns, our review of constitutional questions is de novo. *Studier v Mich Pub Sch Employees' Retirement Bd*, 472 Mich 642, 649; 698 NW2d 350 (2005).

MCL 600.2926 permits "[c]ircuit court judges in the exercise of their equitable powers, [to] appoint receivers in all cases pending where appointment is allowed by law." Under this provision, a circuit court has "broad jurisdiction" to appoint a receiver in appropriate cases. *Reed v Reed*, 265 Mich App 131, 161; 693 NW2d 825 (2005). As this Court has previously explained:

> [MCL 600.2926] has been interpreted as authorizing a circuit court to appoint a receiver when specifically allowed by statute and also when no specific statute applies but the facts and circumstances render the appointment of a receiver an appropriate exercise of the trial court's equitable jurisdiction. The purpose of appointing a receiver is to preserve property and to dispose of it under the order of the court. In general, a receiver should only be appointed in

extreme cases. But a party's past unimpressive performance may justify the trial court in appointing a receiver. [*Reed*, 265 Mich App at 161-162 (quotation marks and citations omitted).]

Thus, in cases where a money judgment has entered, a circuit court has the statutory authority to appoint a receiver of any property the judgment debtor has or may thereafter acquire, MCL 600.6104(4), and the equitable authority to make such an appointment when other approaches have failed to bring about compliance with the court's orders, see *Shouneyia v Shouneyia*, 291 Mich App 318, 326-327; 807 NW2d 48 (2011).

In this case, the trial court did not abuse its discretion by appointing a receiver over defendant's property located in Michigan. The original restraining order was entered in May 2012 and more than nine months later, in February 2013, defendant still had not made any effort to comply with the trial court's orders, instead continuing to argue that the records were too voluminous to inventory. Given defendant's complete failure to comply with the court's orders, and plaintiffs' concern that defendant's accountant had already liquidated some of defendant's Michigan assets, the appointment of a receiver to preserve defendant's records and to create an inventory and a privilege log of those records was a proper exercise of the court's equitable and statutory power to appoint a receiver. MCL 600.6104(4). See also *Reed*, 265 Mich App at 161-162 (noting that unimpressive past performance justifies receivership). On these facts, there is also no record support for defendant's assertion that the trial court's appointment was unreasonable, unprincipled, or motivated by bias against defendant.

In protesting the appointment of a receiver, defendant further argues that the appointment of a receiver

over property in Michigan interferes with the federal district court's jurisdiction over discovery matters in violation of the principles of comity. Relevant to defendant's claim, it has long been recognized that "when a court of competent jurisdiction becomes possessed of a case, its authority continues until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action." *Detroit Trust Co v Manilow*, 272 Mich 211, 214; 261 NW 303 (1935). However, contrary to defendant's arguments, at the time that the trial court entered its orders in the present case, the only action of the federal court relating to discovery pertained to the underlying litigation, not to an ancillary and subsequent enforcement proceeding involving property in Michigan. In other words, the trial court's efforts to preserve and identify property within its jurisdiction pursuant to the enforcement of a foreign judgment, see MCL 691.1173, did not constitute interference with the federal court's jurisdiction over the underlying suit.

Defendant's remaining arguments regarding the receiver misconstrue the receiver's role, as well as what plaintiffs are asking for in this postjudgment collection action. First, defendant protests that it will suffer prejudice because the receivership will deprive it of its ability to defend against other creditors in a related federal criminal investigation, and would also destroy its privilege over certain documents. The receiver, however, is an arm of the court and is not intended to benefit either of the parties but "to protect and benefit both parties equally." *Ypsilanti Fire Marshal*, 273 Mich App at 528. The receiver, as an officer of the court, remains unbiased and impartial such that "a receiver's possession of assets and property is tantamount to possession by the court itself." *Id.* Acting in this impartial capacity, the receiver's purpose in the present case

is to preserve defendant's Michigan business records and inventory them in order to ultimately identify potential assets; the receiver's role is not to provide privileged documents or other evidence to federal investigators or other creditors. In short, the appointment of a receiver posed no danger to defendant's interests or privileges.

Second, defendant asserts that appointment of a receiver violates its right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. In support, defendant cites *Rosenthal v Muskegon Circuit Judge*, 98 Mich 208, 210, 215-217; 57 NW 112 (1893), wherein a writ of attachment was used as a search warrant to obtain evidence for use in a subsequent proceeding, a practice which the Court found to be in violation the defendant's right to be free from unreasonable searches and seizures. However, unlike *Rosenthal*, the present case involves the appointment of a receiver to preserve and inventory property for the benefit of all concerned. There is no indication that the business records in the present case are going to be used as evidence against defendant in a subsequent action. Rather, the discovery and appointment of a receiver in this postjudgment collection action are specifically provided for by statute pursuant to MCL 600.6104(1) and (4), and, there being a valid final judgment entitling judgment creditors like plaintiffs to defendant's assets, defendant's Fourth Amendment rights simply are not implicated by the appointment of a receiver in this case.

Finally, defendant also contends that the receivership is tantamount to an execution on its business records contrary to the principle that property must have some monetary value to merit execution on that property. See *Berar Enterprises, Inc v Harmon*, 93 Mich App 1, 8; 285

NW2d 774 (1979) (indicating that only personal property with some "salable worth" is subject to garnishment, which does not include "pieces of paper"). Contrary to defendant's argument, plaintiffs are not seeking to execute on defendant's business records; they are attempting to determine whether defendant has any assets of monetary value and to execute on those assets. Such discovery efforts are permissible in an action to enforce a judgment. See MCL 600.6104(1). Thus, on the whole, the trial court did not abuse its discretion in appointing a receiver and defendant is not entitled to relief on appeal.

Affirmed. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

STEPHENS, P.J., and METER, J., concurred with HOEKSTRA, J.