*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OAKWOOD YPSI LIMITED PARTNERSHIP, M.
J. CEDARGATE LIMITED PARTNERSHIP, and
M. J. BRUNSWICK LIMITED PARTNERSHIP,

        Plaintiffs-Appellees,

v

GEORGE M. NYMAN, DH & GN, LLC,
CEDARGATE, INC., CEDARGATE ASSOCIATES
LIMITED PARTNERSHIP, BRUNSWICK D & G
LIMITED PARTNERSHIP, and OAKWOOD PARK
APARTMENTS LIMITED PARTNERSHIP,

        Defendants-Appellants.

UNPUBLISHED
January 15, 2026
9:18 AM

Nos. 371303; 372294
Oakland Circuit Court
LC No.  2023-201540-CB

Before:  GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendants, George M. Nyman; DH & GN, LLC; Cedargate, Inc.; Cedargate Associates Limited Partnership (Cedargate Partnership); Brunswick D & G Limited Partnership (Brunswick Partnership); and Oakwood Park Apartments Limited Partnership (Oakwood Partnership), appeal by leave granted the following orders of the Oakland Circuit Court: (1) an order granting plaintiffs, Oakwood Ypsi Limited Partnership (Oakland Ypsi), M.J. Cedargate Limited Partnership (MJ Cedargate), and M.J. Brunswick Limited Partnership (MJ Brunswick), partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact); (2) an order appointing Charles D. Bullock as a receiver; and (3) an order denying defendants' motion for relief to record lis pendens. We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

---

[1] *Oakland Ypsi Ltd Partnership v Nyman*, unpublished order of the Court of Appeals, entered October 16, 2024 (Docket No. 371303); *Oakland Ypsi Ltd Partnership v Nyman*, unpublished order of the Court of Appeals, entered October 16, 2024 (Docket No. 372294).

## I. BASIC FACTS AND PROCEDURAL POSTURE

These appeals stem from a dispute over the terms of three limited partnership agreements. The three limited partnerships were established in the 1990s for the purpose of owning and operating three different apartment complexes in Michigan. Oakwood Ypsi was the majority in interest limited partner of Oakwood Partnership. MJ Cedargate was the majority in interest limited partner in Cedargate Partnership. MJ Brunswick was the majority in interest limited partner in Brunswick Partnership. Nyman was a general partner in all three partnerships, either on his own or as a general partner of another general partner of the limited partnerships. All three limited partnerships had partnership agreements that set forth various terms, including termination dates for the partnerships and limits on the actions and authority of general partners.

Oakwood Partnership was initially set to expire in 2021. Cedargate Partnership was set to expire in 2023. Brunswick Partnership was set to expire in 2026. In 2014, the Oakwood Agreement was amended to extend the term of Oakwood Partnership by the consent of the general partners, the class A limited partners, and the class B limited partners to 2034.[2] In 2023, MJ Cedargate, MJ Brunswick, and Oakwood Ypsi indicated that they were not interested in further extending the terms of the partnerships. Nyman then unilaterally amended the agreements as the general partner and the agent under of power of attorney for the limited partners.

Plaintiffs sued defendants, arguing that defendants did not have the authority to amend the limited partnership agreements without the consent of the majority in interest limited partners. They requested that these amendments be declared invalid. Defendants counterclaimed, alleging that plaintiffs had breached the limited partnership agreements by filing a lawsuit rather than transferring their interests and exiting the partnerships. Plaintiffs moved for summary disposition on their claims for declaratory judgment, which the trial court granted after a period of mediation where the parties failed to reach a settlement. The trial court held that the amendments to the limited partnership agreements were void.

Plaintiffs later requested to amend their complaint because the Cedargate Partnership term had expired since their initial complaint was filed. They added the partnerships as nominal defendants for the purpose of dissolution. They further requested the appointment of a receiver for all three partnerships. The partnerships had mortgage notes close to maturing and no way to pay the debts. Nyman had lent Oakwood Partnership money to pay off the maturing note in exchange for a new mortgage on Oakwood Partnership and planned to do the same for Cedarwood Partnership and Brunswick Partnership. The trial court appointed a receiver for all three limited partnerships.

The order appointing a receiver for the limited partnerships prohibited the placement of a lis pendens on the properties owned by the limited partnerships. Defendants moved for relief from the receivership order to place lis pendens on the properties. The trial court denied this motion. These consolidated appeals followed.

---

[2] The Class A limited partners and Class B limited partners are defined in the Oakwood Partnership Agreement. Oakwood Ypsi is a Class A limited partner.

## II. SUMMARY DISPOSITION

Defendants argue that the trial court erred in granting plaintiffs' motion for partial summary disposition because the partnership agreements allowed the general partners to make unilateral amendments. We disagree.

### A. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) examines the factual sufficiency of a claim. *Id*. at 160. The trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion may only be granted if there is no genuine issue of material fact. *Id*. There is a genuine issue of material fact when "the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Questions of contract interpretation are also reviewed de novo. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010).

A moving party under MCR 2.116(C)(10) satisfies its burden by either demonstrating that the nonmoving party's evidence is insufficient to establish their claim or negating an essential element of the nonmoving party's claim with affirmative evidence. *Lowrey v LMPS & LMPJ Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). After the movant has satisfied their burden, the nonmovant may avoid summary disposition by presenting specific facts or evidence that establishes a material factual dispute. *Id*. While a disputed fact "does not need to be outcome determinative in order to be material," it must be "significant or essential to the issue or matter at hand." *McCormick v Carrier*, 487 Mich 180, 194; 795 NW2d 517 (2010) (citation and quotation marks omitted).

"[T]he trial court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 376; 836 NW2d 257 (2013). A trial court has abused its discretion if it chooses an outcome outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

### B. ANALYSIS

Resolution of this issue requires this Court to interpret provisions in the parties' partnership agreements. "This Court's goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271-272; 1 NW3d 308 (2022). "Parties are free to contract as they see fit, and courts must enforce contracts as written unless they are in violation of law or public policy." *Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 263; 911 NW2d 241 (2017).

We construe contracts as a whole, *Kendzierski v Macomb Co*, 503 Mich 296, 324; 931 NW2d 604 (2019); and interpret the words of a contract according to their plain and ordinary meaning, *Wyandotte Electrical Supply Co v Electrical Technology Sys*, *Inc*, 499 Mich 127, 144; 881 NW2d 95 (2016). Courts should avoid interpretations of a contract that would render part of it nugatory and instead give effect to "every word, phrase, and clause." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). When a contract is unambiguous, parol

evidence should not be considered. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). Additionally, powers of attorney are strictly construed. *Crane v Kangas*, 53 Mich App 653, 655; 220 NW2d 172 (1974).

Section 5.4 of all three partnership agreements[3] limits the authority of general partners, stating:

> Without the written consent or ratification of the specific act by a majority of interest of the Limited Partners, the General Partners shall not have the authority to:
>
> * * *
>
> (*x*) Amend this Agreement;
>
> * * *
>
> provided, however, if the existence or exercise of the right of Consent or approval under this Section on the part of the Limited Partners would impair the status of the Partnership as a limited partnership under the [Michigan Revised Limited partnership Act (MRULPA), MCL 449.1101 *et seq*.] . . . then such right of Consent or approval shall be null and void, and the General Partner shall have the unrestricted right to perform such act.

Section 12.1A of all three limited partnership agreements states, in part:

> Each Limited Partner . . . by the execution of this Agreement, irrevocably constitutes and appoints each General Partner his true and lawful attorney-in-fact with full power and authority in his name, place and stead to execute, acknowledge, deliver, swear to, file and record at the appropriate public offices such documents as may be necessary or appropriate to carry out the provisions of this Agreement, including but not limited to:
>
> (*i*) all certificates and other instruments (including counterparts of this Agreement), and any amendment thereof, which the General Partner deems appropriate to form, qualify or continue the Partnership as a limited partnership in the State of Michigan or other jurisdiction which the General Partner deems such filings appropriate[.]

---

[3] Section 5.4(x) of the Cedargate Agreement, and § 5.4(ix) of the Brunswick and Oakwood Agreements.

Section 12.2A of all three limited partnership agreements states, in part, "[s]ubject to the provisions of Section 10.2 hereof and the limitations herein contained, the General Partner and a majority in interest of the Limited Partners may amend this Agreement[.]"

The provisions of the limited partnership agreements at issue are unambiguous.[4] The language of the partnership agreements plainly grants the general partners power of attorney, which allows them to take certain actions without the consent of the limited partners. *Wyandotte Electrical Supply Co*, 499 Mich at 144. Equally clear from the contractual language is that the general partners must obtain the consent of the majority in interest of the limited partners for certain actions, including amending the limited partnership agreements. *Id.*; *Crane*, 53 Mich App at 655. Defendants argue that the consent of the limited partners was not required for the amendments increasing the terms of the limited partnerships because failing to increase the term "would impair the status of the Partnership as a limited partnership" under the MRULPA. We disagree.

Actions that constitute impairing the status of a limited partnership are not defined in the partnership agreements or the MRULPA. However, the MRULPA provides that a limited partnership may be dissolved when the first of the following events occurs: 1) the time or event specified in the certificate; 2) all partners give written consent; 3) a general partner withdraws, except in certain circumstances not relevant to this case; or 4) a decree for judicial dissolution is entered. MCL 449.1801. There is no guarantee of an eternal limited partnership. The MRULPA specifically provides that the certificate of a limited partnership should include "[a]ny time at which or events upon the happening of which the limited partnership is to be dissolved and its affairs wound up." MCL 449.1201(a)(11).

Each of the partnership agreements contains an express termination date in § 2.4. Giving effect to the termination dates explicitly contained in the limited partnership agreements, it is clear that the limited partnerships were meant to be dissolved on specified dates. MCL 449.1801(1); *Wyandotte Electrical Supply Co*, 499 Mich at 144. The limited partnership agreements should not be read so as to equate impairment of a partnership with the termination of a partnership. Rather, this Court reads unambiguous contracts as they are written, and the limited partnership agreements do not state that the general partners may act unilaterally to prevent the *termination* of the limited partnerships on the contractually provided dates. *Edmore*, 322 Mich App at 263. Because the partnerships all had set termination dates, allowing them to expire as planned did not impair the partnerships. Expiration on the previously agreed-upon dates was consistent with the terms of the partnership agreements. In addition, defendants acted in direct contradiction to plaintiffs' refusal to consent to the extension of the partnership agreements. Though defendants could act without seeking consent in limited circumstances, this is not the same as ignoring plaintiffs' explicit refusal after defendants sought consent.

---

[4] Because we conclude the provisions of the partnership agreements are unambiguous, we decline to consider the affidavit of the drafting attorney provided by defendants on appeal. *Shay*, 487 Mich at 667.

Defendants also argue that because § 12.1A allows the general partners to amend the limited partnership agreements to "form, qualify or continue the Partnership as a limited partnership in the State of Michigan," they did not need to seek the consent of the majority limited partners. The preceding analysis regarding ambiguity applies, as continuing the partnership is not equivalent to extending the partnerships. *Id*. For example, there may be regulatory requirements that need to be fulfilled in order for a partnership to continue operating. See, e.g., MCL 449.1106 (describing the documents that must be kept at the office of a limited partnership). Meeting these requirements does not extend the length of the partnership, but allows it to continue operating as it had been. This contrasts with defendants' attempt to prolong the terms of the partnerships.

Additionally, interpreting the agreements as requested by defendants would render several provisions of the limited partnership agreements nugatory. If the general partners were permitted to extend the term of the limited partnerships of their own volition, there would be no point of setting termination dates or stating that the general partners could not amend the limited partnership agreements without consent. Defendants' interpretation of the contract would render parts of it meaningless, which we seek to avoid. *Tuscany Grove Ass'n*, 311 Mich App at 393. Finally, while defendants contend the last sentence of § § 5.4 and 12.1A control because they are the more specific provisions, these provisions do not control because they do not specifically address the amendment of the term. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367 n 22; 817 NW2d 504 (2012) (explaining that a specific contractual provision controls over a related but more general provision). Reading the contract as a whole, defendants could properly utilize their power of attorney to amend the limited partnership agreements by signing for the majority limited partner if that partner had given consent. *Kendzierski*, 503 Mich at 324.

The trial court did not err in granting plaintiffs' motion for summary disposition under MCR 2.116(C)(10) because defendants' argument that the general partners could amend the limited partnership agreements without the consent of the majority in interest limited partners was unsupported by the plain text of the partnership agreements. *Lowrey*, 500 Mich at 7. The trial court then granted declaratory relief by holding the amendments "invalid, of no effect, and void." Defendants argued that the amendments were valid even if the general partners did not have the ability to enact them because the amendments were already made.

"In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). There is an actual controversy for the sake of a declaratory judgment when a plaintiff pleads and shows a factual basis for an adverse interest that requires a judgment to protect their legal rights. *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 225; 934 NW2d 713 (2019).

In this case, plaintiffs specifically requested declaratory relief. MCR 2.605(A)(1). As discussed, defendants violated § § 5.4 and 12.1A of the limited partnership agreements. This was adverse to the interests of plaintiffs, who did not want to extend the terms of the limited partnerships. A judgment was required to protect their legal rights because if the amendments were allowed to stand, plaintiffs would have to remain a limited partner for longer than they wished or seek to otherwise transfer their interests. *Mich Ass'n of Home Builders*, 504 Mich at 225. In light of the preceding analysis and the correctness of the summary disposition decision, the trial court's granting of declaratory relief was not outside the range of principled outcomes.

*Maldonado*, 476 Mich at 388. Therefore, the trial court did not abuse its discretion in holding the limited partnership amendments void. *Pioneer State Mut Ins Co*, 301 Mich App at 376. [5]

## III. RECEIVERSHIP ORDER

Defendants argue that the trial court abused its discretion in appointing a receiver because there are other adequate remedies. We agree regarding Oakwood Partnership and Brunswick Partnership, and disagree regarding Cedargate Partnership.

This Court reviews a trial court's decision to appoint a receiver for an abuse of discretion. *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 390; 853 NW2d 421 (2014). Circuit courts are permitted to appoint a receiver "in all cases pending where appointment is allowed by law." MCL 600.2926. "This statute has been interpreted as authorizing a circuit court to appoint a receiver when specifically allowed by statute and also when no specific statute applies but the facts and circumstances render the appointment of a receiver an appropriate exercise of the circuit court's equitable jurisdiction." *Reed v Reed*, 265 Mich App 131, 161; 693 NW2d 825 (2005) (citation and quotation marks omitted). MCL 554.1016(1) allows for appointment of a receiver in the following relevant circumstances:

> (a) Before judgment, to protect a party that demonstrates an apparent right, title, or interest in property that is the subject of the action, under either of the following circumstances:
>
> (*i*) The property or its revenue-producing potential is being subjected to or is in danger of waste, loss, dissipation, or impairment.
>
> (*ii*) The property or its revenue-producing potential has been or is about to be the subject of a voidable transaction.

The receiver acts as an officer of the court and is meant to protect both parties. *Arbor Farms, LLC*, 305 Mich App at 392. A receiver may be appointed to "preserve property and to dispose of it under the order of the court. In general, a receiver should only be appointed in extreme cases. But a party's past unimpressive performance may justify the trial court in appointing a receiver." *Id*. at 390-391 (citation and quotation marks omitted). A receiver "is a remedy of last resort" and should not be appointed if "another, less drastic remedy exists." *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 530; 730 NW2d 481 (2007).

A receiver was appointed for all three limited partnerships. Because the unilateral amendments were appropriately found invalid by the trial court, the termination dates for the

---

[5] We note, that were we to subscribe to defendants' position and adopt the very broad powers they advocate for, there would be nothing to prevent a general partner from unilaterally extending in perpetuity a contractual relationship that the signatories to an agreement had specifically agreed to at the time of the original creation of the partnership which had a specific finite period of time and an ending date. This could then result in a minority partner being placed in a position where they may never be able to receive the return of their equity investment.

limited partnerships are as follows: Cedargate Partnership expired December 31, 2023; Brunswick Partnership will expire December 31, 2026; and Oakwood Partnership will expire May 1, 2034. At the time the trial court considered the appointment of a receiver, Cedargate Partnership had expired and no action had been taken to wind up its affairs. Defendants continued to argue that dissolution of Cedargate Partnership was not required, even if the Cedargate Amendment was found void. It therefore seems likely that defendants would not cooperate in the dissolution and wind up process of Cedargate Partnership. This delay could impair management of the apartment building owned by Cedargate Partnership or lead to a loss in value. MCL 554.1016(1)(a)(*i*). Additionally, defendants' history of refusing to dissolve and wind up Cedargate Partnership, including unilaterally executing the amendment, also justifies the trial court's decision to appoint a receiver for Cedargate Partnership. *Arbor Farms, LLC*, 305 Mich App at 391. Other remedies would not solve these issues. *Ypsilanti Fire Marshal*, 273 Mich App at 530. Monetary damages would be insufficient if the eventual sale price was significantly reduced by defendants' refusal to wind up Cedargate Partnership. *Id*. The trial court did not abuse its discretion in appointing a receiver over Cedargate Partnership. *Arbor Farms, LLC*, 305 Mich App at 390.

However, Brunswick Partnership and Oakwood Partnership had not reached their termination dates. Defendants argue that appointing a receiver over these two partnerships was not appropriate because their terms had not expired. It is undisputed that Oakwood Partnership had a mortgage note set to mature on May 1, 2024. Nyman unilaterally lent Oakwood Partnership over $2 million to pay off this mortgage note in exchange for a mortgage with Nyman as the mortgagee and Oakwood Partnership as the mortgagor. Brunswick Partnership's mortgage note was allegedly set to mature on November 1, 2024, and Nyman planned to pay off the note in exchange for a mortgage with Brunswick Partnership. Though this date has passed, it is unclear what has happened with the Brunswick Partnership's mortgage note.

Section 5.4A of the Oakwood Partnership and Brunswick Partnership agreements stated:

> Without the written consent or ratification of the specific act by a majority in interest of the Class A Limited Partners,[6] the General Partner shall not have authority to:
>
> \* \* \*
>
> (*xi*) lease (in one transaction), sell, exchange, mortgage, encumber, pledge, or transfer all or substantially all of the assets of the Partnership except the initial mortgages for the purposes of acquiring the Partnership Property;
>
> (*xii*) incur on behalf of the Partnership indebtedness for borrowed money other than in the ordinary course of business not to exceed $10,000 in any specific circumstance or $25,000 in the aggregate at any one time[.]

---

[6] The Brunswick Agreement requires the majority in interest of the limited partners, as there are not classes of limited partners in the Brunswick Partnership.

Nyman's payment of over $2 million to Oakwood Partnership in exchange for a mortgage violated the terms of the partnership agreement because there is no indication that he obtained the consent of Oakwood Ypsi, the majority in interest limited partner. Defendants argue that plaintiffs created this situation by refusing to consent to refinancing and therefore equitable relief should not be available. However, defendants also admitted that plaintiffs were willing to consider a mortgage where both plaintiffs and defendants participated, but discussions fell apart. It is not clear that plaintiffs alone refused to consent to any type of refinancing. Their lack of consent to refinancing does not excuse Nyman's violation of § 5.4A, which clearly laid out what actions were prohibited for general partners to take unilaterally. *Edmore*, 322 Mich App at 263.

Plaintiffs argue that Nyman's actions fostered an atmosphere of distrust between them and defendants and created a conflict of interest for Nyman as a general partner and a lender. The limited partnership agreements specifically state in § 5.3D that partners "may deal with the Partnership, directly or indirectly, as vendor, purchaser, employee, agent, or otherwise, provided that any agreements, costs, or fees pursuant thereto are competitive and reasonable." Regardless of concerns related to self-dealing that § 5.3D may address, general partners do not have the authority to enter into mortgages without consent of the majority limited partners, which Nyman did not seek. *Id*. Nyman's behavior raises questions as to the continued ability of plaintiffs and defendants to work together, especially in light of their numerous failed attempts to settle this case. *Arbor Farms, LLC*, 305 Mich App at 390-391.

Nevertheless, it is not clear that appointing a receiver was the least restrictive option. *Ypsilanti Fire Marshal*, 273 Mich App at 530. Plaintiffs argue that monetary damages are insufficient because they specifically wanted to dissolve the limited partnerships. The dissolution and winding up of a partnership involves gathering its assets, settling any debts, and distributing any surplus proceeds to those entitled to the profits. *Urbain v Beierling*, 301 Mich App 114, 130; 835 NW2d 455 (2013). Upon application for the dissolution of a partnership, the trial court "may make such order or grant such relief, other than dissolution, as it deems appropriate." MCL 449.1802. Plaintiffs argue that nothing short of appointing a receiver to dissolve the partnerships would address defendants' disregard of plaintiffs' rights. It is possible that there are remedies short of dissolution by way of a receiver that may be appropriate. *Id*. Plaintiffs do not explain why being bought out of the partnerships and therefore no longer having to work with defendants would be an inadequate remedy.

Additionally, the Oakwood Partnership and Brunswick Partnership agreements contain § 7.1C, which provides that limited partners may transfer, convey, or assign their interests, but must first "offer the same in writing to the General Partner on the same terms and conditions . . . ." Defendants argue that this would be appropriate in the cases of Oakwood Partnership and Brunswick Partnership, with an additional money judgment if needed. The trial court did not contemplate an alternate remedy other than a receivership for Oakwood Partnership and Brunswick Partnership, such as a buy-out of plaintiffs' interests. There may have been an alternative, less restrictive remedy available. *Ypsilanti Fire Marshal*, 273 Mich App at 530. Because these partnerships are ongoing, unlike Cedarwood Partnership, the trial court abused its discretion in failing to consider other remedies. *Arbor Farms, LLC*, 305 Mich App at 390.

We affirm the receivership order for Cedarwood Partnership and vacate the receivership order as to Brunswick Partnership and Oakwood Partnership with instructions for the trial court to

consider alternative remedies on the record before appointing a receiver for Oakwood Partnership and Brunswick Partnership.

## IV. LIS PENDENS

Defendants argue that the trial court erred in refusing to modify the receivership order to allow them to record lis pendens on the partnership properties. We agree.

Defendants moved for relief from the receivership order pursuant to MCR 2.612(C)(1)(f), for "any other reason justifying relief from the operation of the judgment." The decision of a trial court on a motion under MCR 2.612(C)(1) is reviewed for an abuse of discretion. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007).

Under MCR 2.612(C)(2), motions for relief from an order on the grounds of MCR 2.612(C)(1)(f) must be made within a reasonable period of time. To grant a motion pursuant to MCR 2.612(C)(1)(f), "our courts have long required the presence of both extraordinary circumstances and a demonstration that setting aside the judgment will not detrimentally affect the substantial rights of the opposing party." *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010). Subrule (f) should only be applied when subrules (a) through (e) are inapplicable. *Id*. at 59. Subrules (a) through (e) are as follows:

> (a) Mistake, inadvertence, surprise, or excusable neglect.

> (b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

> (c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

> (d) The judgment is void.

> (e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application. [MCR 2.612(C)(1)(a) through (e).]

"Generally, a lis pendens is designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist and take subject to the judgment rendered in the litigation." *Richards v Tibaldi*, 272 Mich App 522, 536; 726 NW2d 770 (2006) (citation and quotation marks omitted). MCL 600.2701(1) states:

> To render the filing of a complaint constructive notice to a purchaser of any real estate, the plaintiff shall file for record, with the register of deeds of the county in which the lands to be affected by such constructive notice are situated, a notice of the pendency of such action, setting forth the title of the cause, and the general object thereof, together with a description of the lands to be affected thereby.

When a defendant files a counterclaim "upon which he demands an affirmative judgment affecting the title to, or the possession, use or enjoyment of real property, he may file for record a like notice at the time of filing his answer or at any time afterwards before final judgment." MCR 600.2711. When statutory language is clear, it should be enforced as written. *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 597 (2023).

In this case, defendants counterclaimed for breach of contract challenging the dissolution of the partnerships. The limited partnership agreements govern the partnerships, all of which own and control real property. Therefore, defendants sought judgment affecting the title of the properties or their possession, use, or enjoyment. MCL 600.2711. Of note is that plaintiffs did not file lis pendens and make no argument that their complaint would not affect the partnership properties. MCL 600.2701.

Relief was warranted under MCR 2.612(C)(1)(f). Defendants moved for relief approximately three months after the trial court ordered a receivership. MCR 2.612(C)(2). None of the other subrules of MCR 2.612(C)(1) were applicable. *Rose*, 289 Mich App at 59. There was an extraordinary circumstance because defendants had a statutory right to lis pendens that was violated by the trial court's refusal to amend the receivership order. *Id*. at 58. The substantial rights of plaintiffs will not be detrimentally affected by the filing of lis pendens, as they function as a warning to potential buyers. *Id*.; *Richards*, 272 Mich App at 536. Defendants should have been allowed to seek relief from the receivership order to enter lis pendens on the property owned by the limited partnerships. The incorrect application of law is necessarily an abuse of discretion. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294-295; 14 NW3d 472 (2023). Therefore, the trial court abused its discretion when denying defendants' motion to amend the receivership order to enter lis pendens. *Maldonado*, 476 Mich at 388.

We reverse the order denying defendants' motion to amend the receivership order to enter lis pendens. The trial court should allow defendants to enter lis pendens or modify the receivership order as needed, depending on whether the trial court finds that receiverships are the least restrictive option for the Oakwood Partnership and Brunswick Partnership after conducting the appropriate inquiry.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick

-11-