*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BASEM KOMIS,

        Plaintiff/Counterdefendant,

v

KIMBERLY R. BASEHART-GAETANO, TOP
DOLLAR HOLDINGS, LLC, doing business as 420
DANK OF MICHIGAN, LLC, and STAR-TEK
HOLDINGS, LLC,

        Defendants/Counterplaintiffs/Cross-
        Plaintiffs/Third-Party Plaintiffs-
        Appellants,

and

RICHARD GAETANO, JAMINE DICKENS, and
420 DANK OF MICHIGAN, LLC,

        Defendants,

and

420 DANK, LLC,

        Defendant/Cross-Defendant,

and

JALAL BAYDOUN,

        Third-Party Defendant,

and

UNPUBLISHED
March 4, 2021

No. 351287
Wayne Circuit Court
LC No. 17-012714-CB

-1-

GREGORY A. GOODMAN,

      Third-Party Defendant-Appellee.

---

Before: MURRAY, C.J., and JANSEN and STEPHENS, JJ.

MURRAY, C.J. (*concurring in part, dissenting in part*).

I concur with the majority's conclusions as to the trial court's rulings on the competing motions for summary disposition, as well as on the trial court's rulings on the discovery matters that are not otherwise moot. However, for the reasons expressed briefly below, I respectfully dissent from the majority's conclusion that the trial court erred in briefly incarcerating Gaetano and, that as a result of the "contempt issue," the trial court should be disqualified from presiding over the case on remand.

## I. PHOTOGRAPHING A WITNESS

The majority concludes that the trial court "unfairly punished Gaetano for criminal contempt without minimum due process protections." But as the majority recognizes, there are several ambiguities in the record regarding this issue, and in my estimation, there are too many to conclude that the trial court erred. And, in any event, there is no relief that can be afforded Gaetano for any error that did occur.

It is important to recognize that the absence of a written order finding Gaetano in contempt does not preclude our review of the issue. Although the trial court stated on the record that Gaetano was in contempt, there was never a written order finding her in contempt, and almost always it is orders, not statements from the bench, that control. *Tomasik v Michigan*, 327 Mich App 660, 678; 935 NW2d 369 (2019). But there are some circumstances when "[a]n oral ruling has the same force and effect as a written order," *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 388; 853 NW2d 421 (2014), and this appears to be one, as the record evinces that Gaetano was temporarily detained in a holding cell as a result of the court's oral statement that she was in contempt. The oral ruling contained the indicia of formality and finality comparable to a written order. *Id*.

What is unclear is what conduct the trial court based its finding of contempt upon. Certainly photographing the court's expert in the court hallway was considered contemptuous conduct. But the record is fairly clear that the court also found that Gaetano misrepresented certain important facts to the court, in particular *why* she took a photo of the expert, and exacerbated the situation when she admittedly transmitted the photo to one of her employees. In particular, during the court's questioning[1] of Gaetano about why she took the photo, Gaetano originally stated[2] that

---

[1] This questioning took place after the court provided Gaetano time to speak with her counsel.

[2] Gaetano was never sworn, so her statements were not sworn testimony.

it was to show her counsel what was occurring, as she thought it was inappropriate. The court deemed that explanation untruthful, and upon further questioning, Gaetano admitted that she had sent the photo to an employee.[3] It was *after* that disclosure that the court indicated that it felt Gaetano was trying to intimidate the witness, as she knew the expert was allowed to speak with the parties without counsel present (something Gaetano had already done, as she admitted to the court), and thus was aware he was doing nothing wrong. And, importantly, it was *after that* disclosure that the court concluded that Gaetano was in contempt.

Three important points arise from these facts. First, the court's oral finding of contempt was based on both the act of taking the photo and Gaetano's reluctant admission that she sent the photo not to her attorney, but to one of her own employees, and that the purpose was intimidation of a witness. Second, because the reluctant admission occurred in the presence of the court, it sufficed for a direct contempt finding. See *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003) ("Contempt of court is defined as a willful act, omission, or statement that tends to . . . impede the functioning of a court") (quotation marks and citations omitted) and *In re Contempt of Henry*, 282 Mich App 656, 675; 765 NW2d 44 (2009) (The term "direct contempt" refers to a contempt that "is committed in the immediate view and presence of a court" and that may be summarily punished by the court); MCL 600.1711(1) ("When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both."); MCL 600.1701(a) (stating that a court may punish "[d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority."). "Such direct contempt occurs when all the facts necessary to find the contempt are within the personal knowledge of the judge." *In re Contempt of Henry*, 282 Mich App at 675. As the trial court noted, MCR 8.115(C)(3) also provides the court with authority to, *inter alia*, find a person in contempt for photographing a witness.

Third, and finally, the April 17, 2018 order regarding Gaetano indicates that the focus of the hearing was the "taking, production and elimination of a photograph of the financial expert taken by defendant in the hallway (presence) of the court." Thus, the order establishes that the hearing was not just about the "taking" of the photo in the hallway, but also about its production and elimination, which included the colloquy between the court and Gaetano where Gaetano made misrepresentations and the disclosure about transferring the photo. And, although the order includes the word "presence," it is not—as the majority states—clear about what is being referenced as having occurred in the court's presence. Was it the hearing and Gaetano's statements, the elimination of the photo, or just the taking of the photo in the hallway that is referred to? It is ambiguous at best, and as a result cannot be the basis of any error.[4]

---

[3] The court also confirmed on the record with the recipient that he received the photo, did not forward it to anyone, and deleted it.

[4] It is unclear what more the court could have done to provide Gaetano with more procedural protections before her brief detention. Gaetano had time to speak with counsel prior to the start of the questioning, she was given the opportunity to explain her actions, she admitted to taking the

-3-

For these reasons, I cannot conclude that the trial court erred with respect to its brief detention of Gaetano for misrepresentations to the court and for admittingly violating MCR 8.115(C)(2).

## II. DISQUALIFICATION

The majority concludes that the trial court's actions and statements surrounding Gaetano's photographing the expert witness rose to the level of requiring disqualification from further proceedings because of an appearance of impropriety, MCR 2.003(C)(1)(b). Absent the perceived conduct of the trial court relative to Gaetano, the majority would conclude disqualification was not warranted because the remaining bases were orders and decisions of the court. Even assuming the court committed some error in the detention of Gaetano, disqualification is not warranted under settled law.

Our Court recently reiterated the high hurdles placed on litigants in establishing that a judge should be disqualified for an appearance of impropriety or bias:

> Due process requires that an unbiased and impartial decision-maker hear and decide a case. *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). But "[a] trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*.; see also *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Various nonexclusive grounds for disqualification are set forth in MCR 2.003(C), which provides, in relevant part:
>
> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [Alteration in original.]
>
> Disqualification is also warranted when a judge has more than a "de minimis interest that could be substantially affected by the proceeding[.]" MCR 2.003(C)(1)(g)(iii). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion

---

photo and sending it to her employee, counsel was allowed to raise issues on certain matters, and the recipient of the photo was also questioned on the record and verified that the photo was sent. Given the factual simplicity of the issue, and that some of the contemptuous conduct occurred in the presence of the court, it is unclear what more could have been done on the record to flush out the facts.

displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality.' " *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001), quoting *Cain*, 451 Mich at 496. In fact, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App [546,] 567, [781 NW2d 132 (2009)]. An appearance of impropriety may arise when the conduct of a judge "would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Caperton*, 556 US at 888 (quotation marks and citation omitted). [*TT v KL*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 351531); slip op at pp 8-9 (footnotes omitted).]

In examining recusal standards in Michigan, the Court in *Cain*, 451 Mich at 497 n 30, adopted the United States Supreme Court's holding in *Liteky v United States*, 510 US 540, 555-556; 114 S Ct 1147; 127 L Ed 2d 474 (1994), that under the federal recusal statute, 28 USC 455, a judge's hostile comments to a party or counsel is not a proper basis for recusal unless they result from an extrajudicial source or exhibit a high degree of favoritism or antagonism, which only occur in the rarest of circumstances:

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See *United States v Grinnell Corp*, 384 US [563], [] 583; 86 S Ct [1698], [] 1710; [16 L Ed 2d 778 (1966)]. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v United States*, 255 US 22; 41 S Ct 230; 65 L Ed 481 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom

administration—even a stern and short-tempered judge's ordinary-efforts at courtroom administration—remain immune.

Here, all of the incidents raised as a basis for recusal relate to decisions and orders issued by the court. The majority recognizes this fact, and concludes that none of them are sufficient to order disqualification, except for the issue surrounding the contempt. But the decision to hold Gaetano in contempt *is a decision*, and even erroneous decisions cannot form the basis for disqualification. Moreover, nothing in the transcript reveals any inappropriate language or references by the trial court, and the trial court engaged in thorough questioning of Gaetano and her counsel (as well as others) during the hearing. Nothing in the transcript evidences any ill-will or deep-seated favoritism during the course of the hearing. This is especially revealing given that all seem to concede that the parties were very acrimonious and engaged in contentious litigation during the course of the proceedings. Yet the trial court remained focused on what was raised to it during the motion hearing: Gaetano had photographed the court's expert witness (which was improper under the court rule) and had, according to the court, misrepresented why she took the photo, and then disclosed that she had shared it with someone outside the proceedings.

In sum, all disqualification can be premised upon is the conclusion that the procedure followed in placing Gaetano in the holding cell was erroneous. But, as noted above, the law does not permit disqualification in that circumstance. Defendants have a heavy burden of overcoming the strong presumption of judicial impartiality, and have failed to meet that burden. *Cain*, 451 Mich at 497.

For these reasons I would affirm in part, reverse in part, but remand this case to the circuit judge who has presided over this matter since its transfer to Wayne Circuit Court.


/s/ Christopher M. Murray