*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRUCE CARPENTER,

      Plaintiff/Counterdefendant-
      Appellee/Cross-Appellant,

v

GRAND TRAVERSE COUNTY SHERIFF,
GRAND TRAVERSE COUNTY DEPUTY
SHERIFF SEAN MUGERIAN, GARFIELD
CHARTER TOWNSHIP, and GARFIELD
TOWNSHIP ZONING ADMINISTRATOR,

      Defendants,

and

MELISSA HOGAN and MGH CONGLOMERATE
LLC,

      Defendants/Counterplaintiffs-
      Appellants/Cross-Appellees.

UNPUBLISHED
March 16, 2023

No. 358620
Grand Traverse Circuit Court
LC No. 2019-035156-CH

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

In this action to quiet title, defendants Melisa Hogan and MGH Conglomerates, LLC[1] appeal by right the trial court's order quieting title to the disputed section of real property in favor of plaintiff, Bruce Carpenter. In a cross-appeal, Carpenter challenges the trial court order denying his motion for involuntary dismissal of defendants' counterclaim for quiet title. For the reasons stated in this opinion, we affirm the court's order quieting title in favor of Carpenter and we dismiss as moot Carpenter's claim that the trial court erred by denying his motion for involuntary dismissal.

---

[1] Hogan is the sole member of MGH Conglomerates.

# I. BASIC FACTS

In 1994, Carpenter purchased real property in Traverse City, Michigan. Shortly after purchasing the property, Carpenter constructed a deck and a wire fence, which extended from the deck in both directions. He testified that he "continuously" entertained on the deck and that he also made wood carvings on it. In 1995, Carpenter put in a rock and privacy garden. In 2015, part of the fence was removed so that a drainage ditch could be more easily accessed from Carpenter's property. Sometime around September 2019, he reinstalled the fence, which he stated was in "basically" in the "exact" spot where the original fence had been located. Photographs of the deck, garden, and fence were admitted.

In June 2019, MGH Conglomerates purchased the adjacent property. Hogan testified that the deed was recorded. After the purchase, a survey of the property was completed. On the basis of that survey, Hogan believed that MGH Conglomerates owned the property where the deck and garden were located. She stated that Carpenter was present when the survey was completed and that he was "sheepish" when it became apparent that he had built on what was now her property. Carpenter asked her to gift him the property where his deck and garden were located. She refused and suggested that he should purchase it from her. Thereafter, she decided she should install a fence, but Carpenter objected. She testified that Carpenter told her that the prior owner had given him permission to install the deck and garden and that he also told her that he had acquired it through "eminent domain." Carpenter denied making either statement. He testified that no one gave him permission to put in his deck, fence, or garden.

Hogan, believing the property to be MGH Conglomerates, moved Carpenter's fence so that she could place her own fence where she believed the property line was located. Carpenter testified that he did not give her permission to move his fence. Carpenter added that Hogan had attempted to construct a fence between his residence and his deck and garden. Hogan's fence contractors returned on multiple occasions. At times, Hogan called the sheriff because she believed that Carpenter was trespassing on MGH Conglomerates' property. Carpenter explained that the sheriff asked him to move the deck and garden, but stated that he refused. He stated that he was threatened with arrest for trespassing based on his presence on the disputed area of the property.[2]

Carpenter filed this action for quiet title in November 2019. Relevant to the issues raised on appeal, he alleged that he acquired title to the disputed property by adverse possession. He also alleged that Hogan had trespassed on his property and had torn down his fence. Accordingly, he also sought an injunction to prevent her from additional trespass and vandalism of the disputed property. Defendants denied his allegations, and counterclaimed to quiet title to the disputed land in their favor. Defendants also brought a claim of trespass against Carpenter, alleging that he had built a bridge on MGH Conglomerates' property without permission, had entered MGH Conglomerates' property without permission, and had refused to vacate MGH Conglomerates' property when asked to leave.

---

[2] Based on the threat of arrest, he sued the sheriff. That claim is not before this Court on appeal.

Relevant to the defendants' argument on appeal, the exact boundaries of the disputed area were an issue at trial. Michigan Geomatics surveyed Carpenter's property, including the disputed area where his deck, garden, and fence were located. The crew chief testified that he used a GPS receiver to survey the property. He also collected data on what he called "improvements," which included the deck, landscaping, and a fence. He explained that the deck, garden, and fence were outside the platted boundary of Carpenter's property. Based on the data collected, Scott Mclain, a licensed professional land surveyor, prepared a survey that showed the boundary lines for both Carpenter's property and the disputed area. Mclain explained that the survey included a 2,4983 square foot trapezoidal area that that represented the disputed area.

Following a bench trial, the trial court found that Carpenter had acquired title to the disputed property by adverse possession. The court found that the area that was adversely possessed was depicted in a survey prepared by Mclain. Further, as related to the issue raised in the cross-appeal, the court denied Carpenter's motion for involuntary dismissal of defendants' counterclaim.

## II. ADVERSE POSSESSION

## A. STANDARD OF REVIEW

Defendants argue that the trial court clearly erred by determining that Carpenter acquired title to the disputed area by adverse possession and by finding that Mclain's survey was "appropriate" to show that Carpenter actually possessed the areas depicted in the survey. This Court reviews de novo equitable actions to quiet title. *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004). We review de novo a trial court's conclusions of law following a bench trial, and we review the court's factual findings for clear error. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014) (quotation marks and citation omitted).

## B. ANALYSIS

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The statutory period is 15 years. MCL 600.5801(4). "When the elements of adverse possession have been met, the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Marlette Auto Wash, LLC*, 501 Mich at 202 (quotation marks and citation omitted). "[H]ostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston v Mint Group, LLC*, 335 Mich App 545, 559; 968 NW2d 9 (2021) (quotation marks and citation omitted).

Carpenter purchased his property in 1994. That same year he installed a deck and a fence. He testified that the fence was connected to the deck and that it was installed almost immediately because he had dogs. In 1995, he added a garden. Between then and 2019, he maintained the deck

and the garden. The garden and deck continued to be maintained as of the June 2021 trial date. He testified that he used the deck to entertain and that he would also use it to make wood carvings. He maintained part of the fence between 1994 and 2019, but he removed another section of it around 2015 so that there would be easier access to the drainage ditch. He reinstalled a fence in the same location after the present dispute with defendants escalated. He testified he did not have permission to install the deck, garden, or fence. Carpenter's testimony was corroborated by testimony from a neighbor, who recounted that Carpenter purchased the property and immediately constructed the fence because Carpenter had dogs. He also noted that the deck and the garden were installed shortly after Carpenter's purchase. He was one of the guests that would socialize with Carpenter on the deck. Although Hogan testified that Carpenter told her that he had permission to build his deck, garden, and fence, he denied making that statement and testified that he did not, in fact, have permission to use the disputed area. The court found credible Carpenter's testimony that he did not have permission, and that finding is not clearly erroneous. Accordingly, based on this record, the trial court did not err by finding that Carpenter proved by clear and cogent proof that Carpenter's possession of the disputed area where his deck, garden, and fence were located was actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for a period of 15 years.

Nevertheless, defendants argue that the trial court's finding that Carpenter adversely possessed the disputed area was not supported by clear and cogent evidence because the survey prepared by Mclain was not "appropriate" as there is nothing in the record to support a finding that the survey was, in fact, accurate. We disagree.

After finding that Carpenter had adversely possessed the disputed area, the court turned to a determination of the measurements of area that was adversely possessed. The court found:

> Now, there is a survey that was done on behalf of Mr. Carpenter as exhibit F . . . . [I]t say that describes the adverse possession area as immediately adjacent to the northeast corner of Lot 1 and it covers the garden, which is outlined in very light pencil and it covers the deck up to the edge of the deck, the deck on the north side of the deck is where the survey says the adverse possession might end and the surveyor drew a line parallel to the edge of the dock to a point that was in line with the edge of the drainage easements, that's the line up there. And, the question is, is that all adversely possessed? There is a faint line running from on [sic] Exhibit F running from the southeast corner of the deck to the line which is the proposed adverse possession line near the corner, and there was some talk that maybe that was really all that was possessed but the property north of the fence line was not possessed. If you look at Exhibit E . . ., which is a handwritten schematic of the property, and this says that was done apparently by Mr. Carpenter, and its' handwritten, hand drawn, so it isn't perfectly to scale of course but it sets forth the situation very similar to what we understand it from Exhibit F and testimony. And, it shows on the east side of the deck steps that go down from the deck down headed toward . . . the north, which used to lead to the water back when there was a pond in back, the Boardman dam that actually was close to the water. In any event, you take that deck and add in those steps, that takes most of the area, I think a big share of the area, that lines between this whole fence line and the north line of the proposed adversely possessed area in Exhibit F. So, I think we've got pretty good

evidence most of that's taken by adverse possession, even the parts north of the lot line of the old fence. So, I think the adverse possessed area set forth in Exhibit F is a reasonable estimation of the property that was actually adversely possessed, the north edge of that is at the north edge of the deck and so it isn't as if he's getting any property in addition to what is in the deck, in terms of going to the north. So, I'm going to adopt the Exhibit F survey of the adversely possessed area as what's appropriate.

Defendants complain that there is no evidence to demonstrate that the survey was accurate. Defendants direct this Court to Mclain's testimony that the boundary lines were "drawn for simplicity of making a box around those objects" and that "there was no particular reason for the exact shape of it." Yet, Mclain testified that the boundary for the disputed area was prepared from data collected by a crew chief. The boundary line encapsulated the deck, garden, and fence. That is, Mclain did not just draw a random shape. Instead, he drew the boundary line around the objects that were openly visible on the property. Mclain, who was admitted as an expert, opined that there would be no significant difference in the location of the objects if another surveyor were to determine their location. He stressed that the lines were drawn in relation to the deck, fence, and landscaping. Finally, he explained that his task was to indicate the boundaries of the area that Carpenter was claiming to adversely possess; to that end, he sent a copy of the survey to Carpenter; Carpenter did not ask for any changes. Thus, the record does not reflect that the boundaries were arbitrarily drawn. Instead, Mclain's testimony that they were prepared using locational data related to the fence, deck, and garden.

Moreover, the trial court did not just rely on the survey and Mclain's testimony to determine that the survey was accurate. Rather, the court considered it in connection with the testimony and other documentary evidence presented. In particular, the court compared the survey to Carpenter's hand drawn schematic of the property. The so-called hand drawn schematic depicts the adversely possessed area as encompassing the deck, garden, and fence. Defendants complain that the hand drawn schematic included steps leading to a dock and that there was no testimony regarding the steps. However, Carpenter testified that hand drawn schematic was the area that he was claiming to have adversely possessed; thus, the court's comparison of the survey and hand drawn schematic and Carpenter's testimony regarding that exhibit was not improper. Moreover, with regard to the survey, Carpenter testified that the survey depicted the are that he was claiming that he adversely possessed. On this record, we conclude that the trial court did not clearly err by finding that it was appropriate to rely on the survey to determine measurements of the adversely possessed area.

III. CROSS-APPEAL

In his cross-appeal, Carpenter argues that the trial court erred by denying his motion for involuntary dismissal of defendants' counterclaim for quiet title. We conclude that, in light of our determination that the trial court did not err by quieting title to the disputed area in favor of Carpenter, the issue is moot. Whether an issue is moot is a threshold issue that this Court must decide before we may reach the substantive issues. *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019). We will not decide moot issues. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). An issue is moot if this Court's decision "cannot for any reason have a practical legal effect on the existing controversy."

-5-

*Id.* (quotation marks and citation omitted). "An issue becomes moot when a subsequent event renders it impossible for the appellate court to fashion a remedy." *Id.* at 450 (quotation marks and citation omitted). Here, regardless of whether the trial court erred by denying the motion for involuntary dismissal, the trial court quieted title in Carpenter's favor and we have affirmed that decision. Thus, events that occurred after the order as entered render it impossible for this Court to grant relief. Accordingly, this issue is moot.

Moreover, even if we were to consider Carpenter's claim that the trial court erred by denying his motion for involuntary dismissal, we would not find it meritorious. Carpenter argues that MGH Conglomerate did not have a valid deed because they could not establish that it was signed by an agent with the power to convey the principal's interest in the property. Yet, at trial, Hogan testified that MGH Conglomerates purchased the property in 2019, that she received a deed, and that she attempted to enforce her right of possession against Carpenter. The deed was, in fact, recorded. Further a title company assisted with the closing. On this record, even if this issue were not moot, Carpenter would not be entitled to relief because the trial court did not clearly err by determining that defendants presented prima facie evidence that they were the title owners of the disputed area and that they could bring an action to quiet title in their favor. See *Trademark Properties of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 138; 863 NW2d 344 (2014). Carpenter cannot refute that prima facie showing of title by speculating that the agent may not have had the authority to convey the property to MGH Conglomerates.

Affirmed. No taxable costs are awarded, neither party having prevailed in full. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron